UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

GINA M. PEARCE; STEPHEN L. PEARCE; and
JOSEPH LONGO,

                                    Plaintiffs,              6:10-CV-1569

                    v.

Estate of Officer JOSEPH A. LONGO, JR.,
Individually and as a former member of the Utica
Police Department; DANIEL LABELLA, Individually,
as a member of the Utica Police Department, and as
Commissioner of Public Safety; DAVID ROEFARO,
Individually and as Mayor of Utica; CITY OF UTICA;
UTICA POLICE DEPARTMENT; and JOHN/JANE DOE,

                            Defendants.


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                              OF COUNSEL:

OFFICE OF JOHN W. DILLON                  JOHN W. DILLON, ESQ.
Attorney for Plaintiffs
44 Oxford Road
New Hartford, NY 13413

OFFICE OF CORPORATION COUNSEL             JOHN P. ORILIO, ESQ.
CITY OF UTICA                             ARMOND J. FESTINE, ESQ.
Attorneys for Defendants LaBella, Roefaro,
   the City of Utica, and the Utica Police
   Department
One Kennedy Plaza
Utica, NY 13502

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

        Plaintiffs—distributee of Kristin Mary Palumbo Longo ("Kristin"), administrator of her

estate, and guardians of the remaining distributees—bring this action against defendants

for violations of Kristin's federal constitutional rights.   The defendants include:  the estate of Officer Joseph A. Longo, Jr.; Daniel LaBella ("LaBella"), former Chief of the Utica Police Department and current Commissioner of Public Safety; David Roefaro ("Roefaro"), Mayor of Utica; the City of Utica and the Utica Police Department (collectively "the City" or "UPD")[1]; and John/Jane Doe.  Plaintiffs assert six causes of action pursuant to 42 U.S.C. § 1983[2] as well as two pendent state law claims arising from the September 28, 2009, murder of Kristin by her husband, Utica police officer Joseph A. Longo, Jr. ("Longo"). Plaintiffs seek monetary damages.

LaBella, Roefaro, and the City/UPD ("defendants") have filed a 12(b)(6) motion to dismiss the section 1983 claims and argue:  (1) Longo was not acting under color of state law at the time of the murder; (2) the complaint fails to allege that LaBella, Roefaro, or the City/UPD violated any of Kristin's civil rights; (3) LaBella and Roefaro are entitled to qualified immunity; (4) plaintiffs fail to state equal protection and conspiracy claims; and (5) defendants did not have a duty to protect Kristin.  Plaintiffs oppose and seek to file an amended complaint and corrected summonses.  Oral argument was heard on February 24, 2011, in Utica, New York.  Decision was reserved at that time.

## II.  FACTUAL BACKGROUND

The following facts, taken from the proposed amended complaint, are assumed true for purposes of this motion.

---

[1]  As the City of Utica and the Utica Police Department are essentially the same municipal entity, they will be consolidated for purposes of this action.

[2] The specific causes of action are not clearly outlined in the amended complaint.  At oral argument plaintiffs' counsel conceded that any purported loss of consortium claims brought pursuant to section 1983 must be dismissed.  See Pritzker v. City of Hudson, 26 F. Supp. 2d 433, 445 (N.D.N.Y. 1998) (McAvoy, C.J.) ("[S]ection 1983 does not support a derivative claim for loss of consortium.").

In March 2009 LaBella surreptitiously took a civil service test to become police chief of a town or municipality.  This was an improper test for applicants seeking to become chief of police of a city the size of Utica.  Roefaro then passed over qualified candidates who had earned scores equal to or higher than LaBella and appointed LaBella as chief despite knowing that he lacked the requisite credentials and abilities.  LaBella was close friends with Longo and had been partners with him for many years on the UPD.

Kristin suffered extensive verbal, physical, and mental abuse at the hands of Longo during their marriage.  Longo was also abusive towards their children.  The abuse ranged in severity from rude comments and offensive name-calling to pushing and death threats made while brandishing a gun.  On August 13, 2009, Longo threatened to kill himself and the family members while holding his service revolver and stating: "Today is the day I go postal on all of you."  Kristin was reluctant to report this incident to the UPD because one of Longo's supervisors had previously told her that if she reported "anything serious" about her husband he may be suspended, which would have a negative impact on the family's finances.  A supervisor had also discouraged her from seeking an Order of Protection against Longo in the past.

Nonetheless, Kristin reported the above incident to Longo's supervisor on August 14, 2009.  She advised the supervisor that she feared for her life and for the lives of her children.  She also informed the supervisor that Longo was emotionally unstable and in need of mental health counseling—to which the supervisor replied, "I know he is not ok." In a subsequent phone call, the supervisor stated: "Kristin – don't worry.  We're all over this.  We were on it as soon as you called."  The supervisor repeatedly assured Kristin that the UPD would protect her and address the issue directly with Longo.  Shortly thereafter

Longo met with his supervisors.  After this meeting, he returned to the family home while on duty and brandished his gun.  Kristin fled the home and again contacted Longo's supervisor, who advised that Longo's guns would be confiscated.

On September 14, 2009, Longo put the barrel of his service revolver in his mouth and threatened to kill himself in front of Kristin and their youngest child.  Kristin called Longo's supervisor and again relayed her fears.  The supervisor assured her that the UPD was aware of the situation and would take action to protect her and the children.  Also during this time period, Longo was disciplined for allegedly pointing his gun at a woman while working as a security guard at a high school in Utica.  Fellow UPD officers became increasingly concerned at his behavior and at least one colleague urged LaBella to confiscate his weapons.  LaBella refused this plea and instead affirmatively ordered that Longo be permitted to keep his guns and remain on duty.  Nonetheless, one of LaBella's subordinates was concerned enough to override LaBella's order and take away Longo's weapons.

On September 28, 2009, Kristin appeared at an Oneida County Family Court hearing regarding the divorce action she had filed against Longo and was awarded exclusive possession of the family home.  At approximately 3:15p.m. that afternoon, Longo entered the home, stabbed Kristin to death, and committed suicide by stabbing himself.  Soon thereafter, the couple's eight-year-old son returned home from school and discovered the horrific scene.

## III.  DISCUSSION

### A.  Motion to Dismiss—Legal Standard

To survive a 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007).  Although a complaint need only contain "a short and plain statement of the claim showing the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), more than mere conclusions are required.  Indeed, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1950 (2009).

Dismissal is appropriate only where plaintiffs fail to provide some basis for the allegations that support the elements of their claims.  See Twombly, 550 U.S. at 570, 127 S. Ct. at 1974 (requiring "only enough facts to state a claim to relief that is plausible on its face").  When considering a motion to dismiss, the complaint is to be construed liberally, and all reasonable inferences must be drawn in the plaintiffs' favor.  Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

### B.  Cross-Motion to Amend the Complaint

The Federal Rules of Civil Procedure permit a party to amend its pleading once "as a matter of course" within 21 days after service of a motion to dismiss.  Fed. R. Civ. P. 15(a)(1)(B).  Plaintiffs' cross-motion to amend was filed on January 25, 2011—within 21 days of January 10, 2011, when defendants filed their motion to dismiss.  Plaintiffs' request to amend the complaint and serve corrected summonses will therefore be granted as a matter of course.

Normally, this would result in the denial of defendants' present motion to dismiss without prejudice, allowing for renewal after the amended complaint is filed. However, defendants have reviewed the proposed amended complaint and filed a memorandum of law in direct response to it. Moreover, at oral argument both parties made reference only to the amended complaint. Therefore, defendants' motion to dismiss will be analyzed in light of the proposed amended complaint.

### C. <u>Color of Law</u>

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action [has] exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." <u>Carlos v. Santos</u>, 123 F.3d 61, 65 (2d Cir. 1997) (internal quotation marks omitted). To determine whether a police officer acted under color of law, "[m]ore is required than a simple determination as to whether an officer was on or off duty when the challenged incident occurred." <u>Pitchell v. Callan</u>, 13 F.3d 545, 548 (2d Cir. 1994). Instead, a court should consider "the nature of the officer's act, not simply his duty status." <u>Id</u>. Liability may exist, for example, where an off-duty officer "invokes the real or apparent power of the police department" or performs "duties prescribed generally for police officers." <u>Id</u>.

Joseph A. Longo, Jr. was not acting under color of law when he murdered his wife. He was not on duty, nor was he invoking the authority of the police department or acting pursuant to a police regulation. <u>See</u> <u>id</u>. (off-duty police officer who was drunk in his home and shot a guest with his personal gun was not a state actor); <u>Bonsignore v. City of New York</u>, 683 F.2d 635, 638–39 (2d Cir. 1982) (off-duty officer who shot his wife and then committed suicide was not acting under color of state law because his act was not

"committed in the performance of any actual or pretended duty").  Similarly, Longo was not using his police power or performing police duties when, although on-duty, he came to the family home and threatened his family.  It cannot be said that such conduct was made possible only because he was clothed with the authority of state law.

The parties differ on how a finding that Longo did not act under color of law impacts this case.  Defendants suggest it necessitates dismissal of the complaint in its entirety because there is no underlying constitutional violation to support a section 1983 claim. Plaintiffs concede that the search and seizure claim must be dismissed, but maintain that defendants can still be held liable for a substantive due process violation for failing to protect Kristin from the dangerous condition they created through their policies, customs, inaction, and failure to train.  Plaintiffs are correct.

Accordingly, the Fourth and Eighth Amendment claims against the defendants will be dismissed as Longo was not acting under the color of state law.  Further, all federal claims against the defendant estate of Joseph A. Longo, Jr. will be dismissed sua sponte for the same reason.  The remaining substantive due process claim will be analyzed separately.

### D.  Substantive Due Process Claim

Defendants argue that they were under no affirmative duty to protect Kristin from the private violence of her husband.  Plaintiffs counter that this case fits within the "state-created danger" exception.

Generally, a state's failure to protect an individual from private violence does not amount to a violation of the Due Process Clause of the Fourteenth Amendment.  See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 197, 109 S. Ct. 998,

1004 (1989).  However, an exception to this general rule exists where "officers in some way had assisted in creating or increasing the danger to the victim."  Okin v. Vill. of Cornwall-On-Hudson Police Dep't, 577 F.3d 415, 428 (2d Cir. 2009) (quoting Dwares v. City of New York, 985 F.2d 94, 99 (2d Cir. 1993)).  Moreover, "repeated, sustained inaction by government officials, in the face of potential acts of violence, might constitute 'prior assurances' rising to the level of an affirmative condoning of private violence, even if there is no explicit approval or encouragement."  Id. (internal citation omitted).

Even in cases where, as here, defendants did not make explicit assurances that the offender could act with impunity, liability can still attach because "explicit approval of violence is but a subset of the affirmative conduct by state actors that can enhance the danger to a victim."  Id. at 429.  Defendants can commit a substantive due process violation by "implicit encouragement" of the offender's actions.  See id. at 430 (police officers' failure to properly investigate repeated allegations of domestic violence or arrest the offender implied that his actions were permissible and thus affirmatively "increased the risk of violence to the victim").

Plaintiffs have sufficiently stated a substantive due process claim.  The amended complaint alleges that LaBella and Longo's supervisor (assumed to be the John/Jane Doe) were well-aware of the ongoing abuse and threatening behavior manifested by Longo.  Kristin made formal reports and repeatedly contacted the UPD by phone to convey her concerns.  Longo was also accused of pointing his loaded gun at a woman during the course of his employment as a security guard at a high school—an incident defendants likely knew of since the school was located in Utica.  In response, defendants discouraged Kristin from making reports or seeking an Order of Protection.  Defendants

failed to discipline or suspend Longo, promptly confiscate his guns, or have his mental condition evaluated.  LaBella even affirmatively ordered that Longo be permitted to remain on duty and keep his weapons.  These facts are similar to those in Okin, where it was determined that the defendant police officers' conduct had implicitly encouraged the offender's behavior and, thereby, increased the risk of danger to the victim in violation of the Due Process Clause.

Further, to establish a substantive due process violation, plaintiffs must show "that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'"  Id. at 431 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8, 118 S. Ct. 1708, 1717 n.8 (1998)).  As in Okin, the allegations here sufficiently state a claim that the defendants' conduct was conscience shocking.  The dangers of domestic violence are well-established and should be known by the law enforcement defendants.  See id. at n.10.  Defendants had sufficient time to reflect on Kristin's reports and decide what course of action to take in response.  "It requires no inferential leap, in light of what the officers must have known, for a reasonable fact-finder to conclude that the officers' actions demonstrate a willful disregard of the obvious risks of a domestic violence situation, the serious implications of [Kristin's] complaints over a [one and a half]-month period, and the likelihood that their misconduct would enhance the danger to [Kristin]."  Id. at 432.  Therefore, the allegations contained in the amended complaint sufficiently state a claim that defendants' conduct enhanced the danger to Kristin and amounted to deliberate indifference.

Accordingly, defendants' motion to dismiss the substantive due process claim will be denied.

### E. **Personal Involvement**

Defendants argue that LaBella and Roefaro must be dismissed as they were not involved in the conduct that allegedly violated Kristin's constitutional rights.

The personal involvement of a defendant is an essential element of a section 1983 claim.  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).  "A plaintiff must allege a tangible connection between the acts of a defendant and the injuries suffered."  Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986).  It has been established that a supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor; there is no respondeat superior liability under section 1983.  Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003).

In order to hold a supervisor liable under section 1983, one or more of the following must be established:  (1) direct participation in the constitutional deprivation; (2) failure to remedy a wrong after learning about it through a report or appeal; (3) creation of a policy that sanctioned the violative conduct or allowed such conduct to continue; (4) grossly negligent supervision of personnel who committed the violation; or (5) failure to act after receiving information indicating that constitutional violations were occurring.  Colon v. Coughlin, 58 F.3d 864, 873 (2d Cir. 1995).

However, whether all five Colon bases for supervisor liability remain available in light of the Supreme Court's decision in Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1948–49 (2009), has been debated by the district courts in this circuit.  See, e.g., McCarroll v. Fed. Bureau of Prisons, No. 9:08-CV-1343, 2010 WL 4609379, at *4 (N.D.N.Y. Sept. 30, 2010) (Lowe, M.J.) (noting that although the Second Circuit has not yet addressed Iqbal's impact on the five Colon categories, several district courts have

determined that it "nullified" some); <u>Kleehammer v. Monroe County</u>, No. 09-CV-6177, 2010 WL 4053943, at *8 (W.D.N.Y. Sept. 8, 2010) (implying that only the first and third <u>Colon</u> categories survived <u>Iqbal</u>'s requirement of "active conduct" to impose supervisor liability); <u>D'Olimpio v. Crisafi</u>, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (citing, but disagreeing with, several recent decisions that interpreted <u>Iqbal</u> as eliminating all but the first and third <u>Colon</u> categories).

Even if only the first and third categories remain, plaintiffs have pleaded sufficient factual allegations to establish the personal involvement of both LaBella and Roefaro. LaBella had direct knowledge of Longo's ongoing and escalating behavior.  At least one of LaBella's subordinates verbalized concerns to LaBella and urged him to confiscate Longo's guns.  Also, Longo had been accused of pointing a loaded weapon at a citizen while working at a local high school.  However, LaBella did nothing in response.  In fact, he impliedly sanctioned the conduct by ordering that Longo be permitted  to remain on duty and keep his weapons.  This conduct had a direct causal link to the alleged constitutional violations.

Through his allegedly surreptitious and improper appointment of LaBella as police chief, Roefaro implicated himself in the policies and customs that ultimately led to the deprivation of Kristin's civil rights.  As explained below, the amended complaint sufficiently states a claim that the custom of the municipal defendants resulted in the violation of Kristin's civil rights.  As head of the city government, Roefaro was integral in shaping policy.  Moreover, as an official policy decision, Roefaro appointed an unqualified candidate as chief of police—the very same person who was directly involved in the inadequate handling of the matter at issue and ordered Longo to remain on duty and keep

his weapons.  Making all reasonable inferences in plaintiffs' favor at this early stage of the litigation, Roefaro's policy decisions causally link him to the allegedly violative conduct.

Accordingly, defendants' motion to dismiss LaBella and Roefaro will be denied.

### F.  Qualified Immunity

Having determined that plaintiffs have sufficiently stated a substantive due process claim, it must now be determined whether the individual defendants LaBella and Roefaro are nonetheless entitled to qualified immunity.  Government actors are entitled to qualified immunity if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Okin, 577 F.3d at 433 (internal quotation marks omitted).

In denying qualified immunity to the Okin defendants, the Second Circuit noted:

> We therefore find that the state-created danger theory, at the time of defendants' actions here, clearly established that police officers are prohibited from affirmatively contributing to the vulnerability of a known victim by engaging in conduct, whether explicit or implicit, that encourages *intentional* violence against the victim, and as that is the substantive due process violation alleged here, qualified immunity does not apply.
> . . .
> We conclude that the state of the law in 2001 to 2003 gave defendants fair warning that police conduct that encourages a private citizen to engage in domestic violence, by fostering the belief that his intentionally violent behavior will not be confronted by arrest, punishment, or police interference, gives rise to a substantive due process violation, and that defendants, if found liable, would not be entitled to qualified immunity.

Id. at 434, 437.  As noted above, plaintiffs' amended complaint sufficiently alleges that defendants implicitly communicated to Longo that his abusive and threatening behavior would go unpunished and unimpeded.  This conduct created, or at the very least increased, the danger to Kristin and violated a constitutional right that was clearly established at the time.[3]

Accordingly, defendants are not entitled to qualified immunity.

### G.  Municipal Liability

Plaintiffs allege that the defendant City/UPD had a longstanding policy and custom of ignoring or covering up the violent behavior of its police officers and failed to train its officers to properly address incidents of domestic violence involving other officers.[4]

In order to hold a municipality liable under section 1983, a plaintiff must prove that the constitutional violation was caused by (1) a municipal policy, (2) a municipal custom or practice, or (3) the decision of a municipal policymaker.  Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658, 694, 98 S. Ct. 2018, 2037–38 (1978).

### 1.  Custom

A municipality can be found to have a custom that causes a constitutional violation when it is "faced with a pattern of misconduct and does nothing, compelling the conclusion that [it] has acquiesced in or tacitly authorized its subordinates' unlawful actions." Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007).

---

[3] The Okin case, which determined that the right at issue here was clearly established, was decided on August 18, 2009—only four days after Kristin reported the incident in which Longo brandished his gun and threatened to "go postal."

[4] Plaintiffs maintain that "discovery will yield evidence of many more women who were urged to refrain from reporting" domestic abuse perpetrated by UPD officers.

The amended complaint identifies at least five separate contacts between Kristin and high-ranking officers in the UPD during which Kristin reported threatening and violent behavior by Longo.  It also describes an incident at a local high school where Longo reportedly pointed a gun at someone.  Chief LaBella was aware of the situation and was directly involved in the decision to allow Longo to keep his guns and stay on duty without a mental health evaluation.  These factual allegations show a pattern of misconduct—failure to adequately respond to reported incidents of domestic violence and threatening behavior perpetrated by a police officer—that arguably establishes a custom that was tacitly endorsed by the defendant City/UPD.

### 2.  Failure to Train

Inadequate training can be a basis for municipal liability in limited circumstances, such as where "policymakers were aware of, and acquiesced in, a pattern of constitutional violations involving the exercise of police discretion." City of Canton, Ohio v. Harris, 489 U.S. 378, 397, 109 S. Ct. 1197, 1209 (1989) (O'Connor, J., concurring in part and dissenting in part).  To state a failure-to-train claim, plaintiffs must establish that the inadequate training amounted to "deliberate indifference." Id. at 392, 109 S. Ct. at 1205 (majority opinion).  To prove deliberate indifference, plaintiffs must show that:  (1) "a policymaker knows 'to a moral certainty' her employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the city employee will frequently cause the

deprivation of a citizen's constitutional rights."[5] <u>Walker v. City of New York</u>, 974 F.2d 293, 297–98 (2d Cir. 1992); <u>see also</u> <u>Vann v. City of New York</u>, 72 F.3d 1040, 1049 (2d Cir. 1995) ("[D]eliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents.").

It is reasonable to assume that policymakers would expect police officers and administrators to confront situations where other officers engage in violent behavior or, more specifically, domestic violence.  Moreover, proper training would undoubtedly assist officers in handling such delicate and potentially dangerous situations.  As outlined above, there is an alleged history of UPD employees mishandling the situation concerning Kristin and Longo.  It is likely that the repeated failure to take appropriate steps in response to such situations would cause frequent constitutional violations and even enhance the risk of further violence by emboldening the offender.  Therefore, the factual allegations in the amended complaint sufficiently state a claim that the defendant City/UPD manifested deliberate indifference by failing to adequately train the police officers involved in this matter.

In sum, plaintiffs have adequately stated a claim that the UPD is liable for constitutional violations through both a custom and failure to train its employees.  Accordingly, defendants' motion to dismiss the defendant City/UPD will be denied.

---

[5] Because discovery has not begun, plaintiffs do not have to identify a specific deficiency in the City's training program or establish a causal link between the lack of training and the misconduct at issue. <u>See</u> <u>Amnesty Am. v. Town of W. Hartford</u>, 361 F.3d 113, 130 n.10 (2d Cir. 2004).  However, these additional requirements will come into play at the summary judgment stage.  <u>See</u> <u>id</u>.

### H. <u>Equal Protection Claim</u>

The amended complaint does not clearly outline an equal protection claim.  Indeed, the words "equal protection" do not appear anywhere in the document.  However, there is some language that arguably relates to such a claim.  For example, plaintiffs allege that domestic violence victims, all of whom were women, were often discouraged from reporting abuse.  It is also asserted that Kristin had a right "to be free from discrimination based on her gender" and that the UPD had "a dangerous lack of respect for women."  In their motion to dismiss, defendants point out that this "vague" language makes it impossible to respond to any purported equal protection claim.  In response, plaintiffs do not offer a specific counter-argument in support of such a claim.  When asked at oral argument, however, plaintiffs' counsel claimed that the amended complaint "generally stated" an equal protection claim.

To state an equal protection claim in the domestic violence context, a plaintiff must provide evidence "sufficient to sustain the inference that there is a policy or practice of affording less protection to victims of domestic violence than to other victims of violence in comparable circumstances, that discrimination against one sex was a motivating factor, and that the policy or practice was the proximate cause of plaintiff's injury."  <u>Eagleston v. Guido</u>, 41 F.3d 865, 878 (2d Cir. 1994).

As noted above, the amended complaint says very little about an equal protection claim.  There are no allegations that the UPD responded differently or more competently to other victims of violence in comparable circumstances.  Therefore, plaintiffs have failed to allege a discriminatory intent that motivated defendants' conduct towards female victims of domestic violence perpetrated by UPD officers.

Accordingly, any equal protection claim will be dismissed.

**I.  Section 1983 Conspiracy Claim**

Like the equal protection claim, the amended complaint does not specifically detail a conspiracy claim.  The only reference to such a claim is found within the first cause of action, which alleges that Roefaro's appointment of LaBella was "a wrongful and illegal conspiracy."

To support a section 1983 conspiracy claim, a plaintiff must establish:  "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  Ciambriello v. County of Nassau, 292 F.3d 307, 324–25 (2d Cir. 2002).  A plaintiff must assert more than "conclusory, vague or general allegations of conspiracy" and instead provide a factual basis to show "a meeting of the minds" between the state actor and the private party.  Loria v. Butera, No. 5:09-CV-531, 2010 WL 3909884, at *6 (N.D.N.Y. Sept. 29, 2010) (Scullin, J.).

While appointing a person known to be unqualified for the position of police chief arguably constitutes a policy decision supporting municipal liability and personal involvement on the part of Roefaro, such allegations fall short of establishing a section 1983 conspiracy claim.  Nothing in the amended complaint evidences a "meeting of the minds" between Roefaro and LaBella to further a goal of violating Kristin's civil rights.

Accordingly, any section 1983 conspiracy claim will be dismissed.

**IV.  CONCLUSION**

In the amended complaint, plaintiffs sufficiently state a substantive due process claim.  Although Longo was not acting under the color of law, such does not necessitate

dismissal of this action as the amended complaint alleges that the defendants created or enhanced the risk to Kristin's safety.  The individually named defendants LaBella and Roefaro were personally involved in the conduct that allegedly deprived Kristin of her clearly established civil rights.  Therefore, these defendants are not entitled to qualified immunity.  Moreover, the plaintiffs have alleged sufficient factual allegations to establish liability of the defendant City/UPD.

As a result of the above, it is

ORDERED, that

1.  Plaintiffs' cross-motion to amend the complaint is GRANTED;

2.  Defendants' motion to dismiss the amended complaint is DENIED in part and GRANTED in part;

3.  The loss of consortium, equal protection, and conspiracy claims brought under section 1983 are DISMISSED;

4.  The Fourth and Eighth Amendment claims are DISMISSED;

5.  All federal claims against the Estate of Joseph A. Longo, Jr. are DISMISSED;

6.  The following claims are NOT DISMISSED:  (1) the section 1983 substantive due process claim against the defendants Daniel LaBella, David Roefaro, City of Utica/Utica Police Department, and John/Jane Doe and (2) the pendent state claims against all defendants; and

7.  The defendants LaBella, Roefaro, and the City/UPD shall file an answer to the remaining claims in the amended complaint on or before March 14, 2011.

IT IS SO ORDERED.

United States District Judge

Dated:   March 1, 2011
         Utica, New York.